1  LAW OFFICES OF VERTNER & DELL
   VICTOR D. VERTNER (SBN 046100)
2  ADRIENNE DELL, ESQ (SBN 119398)
   5267 Elrose Avenue
3  San Jose, CA 95124
   (408) 266-4198
4
   Attorneys for Defendant
5  JAMES HANNIGAN

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10               SAN JOSE DIVISION

**E-FILING**

**FILED**

2008 SEP -2 P 1:34

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

**CRO8-90442 MISC RMW**

11  UNITED STATES OF AMERICA,      )   MISC. NO.
                                   )
12          Plaintiff,             )   NOTICE OF EMERGENCY MOTION
                                   )   TO TRANSFER "SUPERVISED
13     v.                          )   RELEASE" AND MEMORANDUM OF
                                   )   POINTS AND AUTHORITIES IN
14                                 )   SUPPORT THEREOF
   JAMES HANNIGAN,                 )
15                                 )
          Defendant.               )
16                                 )

17  TO THE UNITED STATES AND ITS ATTORNEYS:

18          PLEASE TAKE NOTICE that on September __, 2008 at 9:00 a.m., or as soon

19  thereafter as this matter may be heard before the assigned Honorable United States

20  District Judge, defendant will move this Court for an order directing the Federal

21  Probation Office for this District to accept transfer of defendant's "supervised release"

22  WITHOUT ADDED CONDITIONS rejected by the sentencing court in the District of

23  Nevada.

24          This Motion will be based on the accompanying Memorandum of Points and

25  Authorities, the complete file and records in this case (including attachments hereto),

26  and such further evidence and arguments as may be allowed by the Court.

27

28                                    1

MEMORANDUM OF POINTS AND AUTHORITIES

**INTRODUCTION**

Defendant, a long-time resident of San Jose, with a wife, children and employment here, was a member of the Hells Angels Motorcycle Club ("HAMC"). As a result of an "incident" at a casino in Laughlin, Nevada, in April 2002, multiple defendants (mostly HAMC members) were indicted in the District of Nevada at Las Vegas (Case No. 2:03-CR-0542-JCM-PAL). Indeed, more than forty (40) persons were ultimately indicted. Extensive pre-trial litigation ensued before the Honorable James C. Mahan, U.S. District Court Judge. In order to manage such a large crowd, Judge Mahan divided the numerous co-defendants into several groups. The first group to go to trial, consisting of eleven (11) co-defendants (including Mr. Hannigan), proceeded for approximately five (5) weeks. When it became clear that the government's case was unraveling, the prosecution offered "bargain basement deals", with dramatically reduced charges than would have resulted had the government succeeded on the indictment allegations. Beyond the initial 11 co-defendants in the aborted trial, all others were dismissed.

In February 2007, nearly five (5) years after the incident at issue, defendant pled guilty to one count of 18 U.S.C. § 1959, violent crime in aid of racketeering activity. He was sentenced to 24 months in custody and 36 months on "supervised release" (*See generally* Judgment Order, Exhibit A, attached).

While the case was pending before the Nevada District Court during the aforementioned five-year period, defendant was granted OR release and permitted to live at his San Jose residence with his family and to pursue his established vocation. During that period, he was regularly visited by officials from the pre-trial release program for **this District.** At no time did defendant violate any of the terms and conditions imposed by the United States Court for the District of Nevada nor those of

2

1  the pre-trial release officials for this District. Moreover, after entering his guilty plea on

2  February 23, 2007, defendant, whose wife was then pregnant, was permitted to remain

3  on release and to self-surrender on May 15 of that year (which he did) (Exhibit A, p. 2).

4      While incarcerated in Terminal Island federal prison, defendant attended 500

5  hours of the Federal Bureau of Prison's Residential Drug Abuse Program and received a

6  certificate of completion (Exhibit B).

7      Defendant has served the first phase of his sentence (total custody in a F.C.I., *i.e.*

8  the Terminal Island facility) and is now residing in a half-way house in Las Vegas.

9  Given his extensive ties to Santa Clara County, defendant has sought to have his

10  "supervised release" transferred to the San Jose branch of the U.S. Probation Office.

11  The sentencing judge, Honorable James C. Mahan of the District of Nevada, has

12  approved of defendant's transfer request. However, the Probation Office in San Jose, by

13  and through Ms. Sonia Lapizco, insists that her office will not approve of the transfer

14  unless and until defendant both executes a "non-association" condition and signs a

15  statement that the HAMC is an "outlaw motorcycle gang" – which were rejected by the

16  sentencing court in Las Vegas. Defendant, in an attempt to obtain a court order in

17  Nevada, filed an "EMERGENCY MOTION TO ENFORCE CONDITIONS OF SUPERVISED

18  RELEASE" (Exhibit C, fully incorporated by reference herein) and a SUPPLEMENT

19  thereto (Exhibit D, also fully incorporated by reference herein).

20      As Nevada counsel put it in defendant's initial EMERGENCY MOTION before the

21  District Court in Las Vegas:

22

23

24          Mr. Hannigan now seeks to reside in the half-way
        house [in the Northern District of California] and fulfill the
25      remaining portion of his sentence. There is no reason or
        indication for the [sic] Ms. Lapizco to <u>arbitrarily decide to</u>
26      <u>amend this Court's Order and impose a new condition to the</u>
        <u>supervised release.</u> The Court's Order does not grant the
27      Parole and Probation Officer the indiscriminate right to

28

impose additional terms to the Court's Order. No reason, implication, just cause, notice or the opportunity to be heard was afforded Mr. Hannigan on Ms. Lapizco's new require-ment. Moreover, this specific condition was argued before this Honorable Court during sentencing, and this Court refused to impose such a restriction. (Exhibit C, pp. 6-7) (emphasis added)

At the hearing on the above-referenced motion, Judge Mahan stated "I've set the conditions for Mr. Hannigan that I feel <u>are appropriate</u> . . ." (Exhibit E, Transcript, p. 4). The Court then commented that:

[a "non-association" condition and the demanded statement regarding the HAMC] <u>seems kind of silly to me</u>. I looked in my dictionary and I – outlaw motorcycle gang, I didn't see any definition so, <u>I don't know what an outlaw motorcycle gang is</u> and that's the condition that it seemed Mr. Hannigan's complaining about and, I mean, I don't know what – what an outlaw motorcycle gang, <u>it seems silly to me</u> . . . (<i>Id.</i> at 5).

Judge Mahan went on to say: "I don't think much of this condition. To me, it's almost <u>unenforceable</u>." (<i>Id.</i> at 8).

Judge Mahan further elaborated thusly:

THE COURT: I'm sympathetic, and you know the way I feel about the First Amendment, you know, and the right of free association. <u>If he wants to – Mr. Hannigan wants to associate with</u> the Cub Scouts, then he can do that, or the Nuns of Saint Mary or <u>the Hells Angels, whatever he wants to do. It's a free country</u> . . . (<i>Id.</i> at 11)

Finally, the Judge concluded:

THE COURT: And so the conditions I set are the conditions I set. I saw no need to impose a condition dealing about – dealing with his association with people and I still don't today so . . . (<i>Id.</i> at 14).

In short, the sentencing court clearly and firmly rejected the imposition of a "non-association" condition and the HAMC incrimination statement to the terms of defendant's "supervised release" order.

1    Judge Mahan did however state that "the California probation officer can set

2  conditions <u>subject to a judge's approval</u>." (Exhibit E, Transcript, at p. 4).   In other

3  words, as Judge Mahan elaborated:  "It's up to the supervising judge in that district to

4  which he's released to say, okay, I agree with Probation or I disagree with Probation."

5  (*Id.* at 11).    In short, the Probation Office cannot unilaterally assert additional

6  conditions.   They can only petition the receiving District Court and move for such

7  additional conditions.   That being the situation, Judge Mahan stated "I think you're in

8  the wrong court . . .", adding:

9
10    [H]e's got to be released to California and then the juris-
      diction over the supervised release will get transferred to
11    California, which is where he will be, and then they'll be a
      judge there and he can apply there to have the condition
12    lifted or changed or modified. (*Id.* at 4).

13  Thus, Judge Mahan, in effect, directed defendant to file his motion in this court.

14    Judge Mahan, by way of example, explained that:

15    [if] somebody comes here [on a supervised release transfer]
      and they say, oh, you know what, we see he's <u>now</u> got a
16    problem with – a drinking problem, for example, so we need
      a new condition that – this fellow gets transferred, . . . here,
17    let's say, and he's – we need a new condition because he's
      got a drinking problem so I want him to get treatment for
18    that.  So then I will impose a new condition saying okay, you
      know, you've got to refrain from alcohol use or whatever or
19    get treatment and counseling, whatever it may be, but it's
      really wherever Mr. Hannigan's going to be released who
20    decides that they're going to do. (*Id.* at 5).

21    Defendant agrees with Judge Mahan's above rationale, *i.e.* if he, <u>subsequent</u> to

22
23  transfer, were to engage in conduct inconsistent with the goals and objectives of

24  supervised release (such as developing "a drinking problem"), the Probation Office could

25  come before this court and request remedial conditions be ordered. The key point is

26  that any *post transfer* issues must be dealt with by this court.   However, what the

27  Probation Office here is seeking to do is impose *pre-transfer* conditions, unequivocally

28

1  denied by the sentencing court, before agreeing to accept the transfer. This court

2  should not acquiesce in such an unjustified demand.

3  **ARGUMENT**

4      18 U.S.C. § 3562(a) provides that "[t]he court, in determining whether to

5  impose a term of probation, and, if a term of probation is to be imposed, in deter-

6  mining the length of the term and the conditions of probation, shall consider the

7  factors set forth in section 3553(a) to the extent that they are applicable." (emphasis

8  added) § 3553(a) is NOT applicable.[1]

9      What is applicable is § 3605, which states as follows:

10         A court, after imposing a sentence, may transfer
11     jurisdiction over a probationer or person on supervised
       release to the district court for any other district to which
12     the person is required to proceed, as a condition of his
       probation or release or is permitted to proceed, with the
13     concurrence of such court. A later transfer of jurisdiction
       may be made in the same manner. A court to which juris-
14     diction is transferred under this section is authorized to

15 _____

16     [1]  § 3553 reads in relevant part:

17         The court, in determining the particular sentence to
       be imposed, shall consider –
18           (1) the nature and circumstances of the offense and
       the history and characteristics of the defendant;
19           (2) the need for the sentence imposed –
            (A) to reflect the seriousness of the offense, to
20     promote respect for the law, and to provide just
       punishment for the offense;
21           (B) to afford adequate deterrence to criminal
       conduct;
22           (C) to protect the public from further crimes of the
       defendant; and
23           (D) to provide the defendant with needed educa-
       tional or vocational training, medical care, or other
24     correctional treatment in the most effective manner;
       (c) the kinds of sentences available;
25           (d) the kinds of sentence and the sentencing range
       established.
26

27

28                          6

1   exercise all powers over the probationer or releasee . . .

2       Thus, a defendant on *direct probation* is treated exactly like one on "supervised

3   release." In other words, the terms are synonymous and interchangeable as the case

4   may be.

5       § 3601, as pertinent here, provides that "[a] person who has been sentenced to

6   probation . . ., or placed on supervised release . . . shall, during the term imposed, be

7   supervised by a probation officer to the degree warranted by the conditions specified

8   by the sentencing court." (emphasis added)

9       Accordingly, the above statute mandates that only "the conditions specified by

10  the sentencing court" [in this case, the Nevada judge] are controlling, *i.e.* the

11  probation office to which transfer is sought [San Jose] cannot impose additional

12  conditions to those "specified by the *sentencing court*."[2]

13

14      To reiterate, this court should bear in mind that Judge Mahan in Las Vegas

15  heard the multi-defendant case from the outset and was fully aware of defendant's role

16  and participation in the offense for which he was convicted. Yet, Judge Mahan chose

17  NOT to impose the "non-association" condition now being demanded by the Probation

18  Officer here (subject to this court's authority).

19      Defendant urges this court to adopt Judge Mahan's findings and conclusion that

20  the two conditions demanded by the Probation Office are, as a practical matter, "silly"

21  and unenforceable" and, therefore, the declination to impose the conditions was

22  "appropriate." Nevertheless, without conceding anything, defendant, in the interest of

23

24  _____

25      [2] None of the usual or "mandatory conditions" (such as refraining from illegal
    drug use, make restitution if applicable or provide current address, etc.) contains any
26  "non-association" provision. [See 18 U.S.C. § 3563(a)]. Nor does 18 U.S.C. § 3583
    (governing supervised release after imprisonment) impose such a mandatory
27  condition. [See, Exhibit C, pp. 3-4 quoting provision in its entirety].

28                                  7

resolving this dispute in an expeditious manner, would stipulate to a "non-association"

condition, but steadfastly objects to signing a statement that the Hells Angels

Motorcycle Club is an "outlaw motorcycle gang." As Judge Mahan so poignantly noted:

"I don't know what an outlaw motorcycle gang is . . ."

**CONCLUSION**

Based on the foregoing, defendant moves this court to enter an order transfer-

ring his supervised release to this District WITHOUT added conditions declined by the

sentencing court.

Dated: September 2, 2008                    Respectfully submitted,

                                            VICTOR D. VERTNER
                                            Attorney for Defendant
                                            JAMES HANNIGAN

Case 5:08-xr-90442-RMW   Document 1   Filed 09/02/2008   Page 9 of 43
AO 245B Case 2:03-cr-00542-JCM-PAL   Document 1591   Filed 06/06/2008   Page 17 of 26
Sheet 1   Case 2:03-cr-00542-JCM-PAL   Document 1553   Filed 03/06/2007   Page 1 of 6

# UNITED STATES DISTRICT COURT

District of _____ Nevada _____

UNITED STATES OF AMERICA

v.

JAMES HANNIGAN

### JUDGMENT IN A CRIMINAL CASE

Case Number:       2:03-CR-0542-JCM-PAL

USM Number:       10026-111

PETER CHRISTIANSEN
Defendant's Attorney

## THE DEFENDANT:

**X pleaded guilty to count(s)**   ONE [1] OF THE CRIMINAL INFORMATION

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §1959 & N.R.S. 200.481 | Violent Crime in Aid of Racketeering | 4/27/2002 | [1] One |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☒ Count(s)   ORIGINAL INDICTMENT   ☒ is   ☐ are  dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

FEBRUARY 23, 2007
Date of Imposition of Judgment

_Denus C. Mahan_
Signature of Judge

JAMES C. MAHAN, U.S. DISTRICT JUDGE
Name and Title of Judge

February 28, 2007

Date

EXHIBIT A

Judgment — Page _2_ of _6_

DEFENDANT:          JAMES HANNIGAN
CASE NUMBER:        2:03-CR-0542-JCM-PAL

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

### [24] MONTHS TO RUN CONCURRENT TO NV STATE CASE NO. C-200642

**X** **The court makes the following recommendations to the Bureau of Prisons:**
**F.C.I. LOMPOC, CALIFORNIA  IF POSSIBLE**
**RESIDENTIAL DRUG TREATMENT PROGRAM IF AVAILABLE**

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

   ☐ a _____    ☐ a.m.    ☐ p.m.    on _____ .

   ☐ as notified by the United States Marshal.

**X** The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   **X** **before 2 p.m.**    **Tuesday, May 15, 2007** _____ .

   ☐ as notified by the United States Marshal.

   ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered _____    to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Case 5:08-xr-90442-RMW     Document 1     Filed 09/02/2008     Page 11 of 43
Case 2:03-cr-00542-JCM-PAL     Document 1591     Filed 06/06/2008     Page 19 of 26
Case 2:03-cr-00542-JCM-PAL     Document 1553     Filed 03/06/2007     Page 3 of 6

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page   3   of   6

DEFENDANT:     JAMES HANNIGAN
CASE NUMBER:     2:03-CR-0542-JCM-PAL

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of:

## [36] MONTHS

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The Defendant shall refrain from any unlawful use of a controlled substance and shall submit to one drug test within 15 days of the commencement of supervision and at least two periodic drug tests thereafter, not to exceed 104 drug tests annually. Revocation is mandatory for refusal to comply.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X    **The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if**

X    **The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)**

☐    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B     (Rev. 06/05) Judgment in a Criminal Case
Sheet 3C — Supervised Release

Case 5:08-xr-90442-RMW    Document 1    Filed 09/02/2008    Page 12 of 43
Case 2:03-cr-00542-JCM-PAL    Document 1591    Filed 06/06/2008    Page 20 of 26
Case 2:03-cr-00542-JCM-PAL    Document 1553    Filed 03/06/2008    Page 4 of 6    6

DEFENDANT:        JAMES HANNIGAN
CASE NUMBER:      2:03-CR-0542-JCM-PAL

## SPECIAL CONDITIONS OF SUPERVISION

1. **Possession of Weapons** - You shall not possess, have under your control, or have access to any firearm, explosive device, or other dangerous weapons, as defined by federal, state, or local law.

2. **Warrant less Search** - You shall submit to the search of your person, property, or automobile under your control by the Probation Officer, or any other authorized person under the immediate and personal supervision of the probation officer without a search warrant to ensure compliance with all conditions of release.

3. **Substance Abuse Treatment** - You shall participate in and successfully complete a substance abuse treatment program, which will include drug testing, outpatient counseling, or residential placement, as approved and directed by the probation officer.  Further, you shall be required to contribute to the costs of services for such treatment, as approved and directed by the probation officer based upon your ability to pay.

4. **Alcohol Abstinence** - You shall refrain from the use and possession of beer, wine, liquor, and other forms of intoxicants.

5. **Report to Probation Officer After Release From Custody** - You shall report in person, to the probation office in the district in which you are released within **72 hours** of discharge from custody.

*Note: A written statement of the conditions of release was provided to the Defendant by the Probation Officer in open Court at the time of sentencing.*

Case 5:08-xr-90442-RMW     Document 1     Filed 09/02/2008     Page 13 of 43
Case 2:03-cr-00542-JCM-PAL     Document 1591     Filed 06/06/2008     Page 21 of 26
Case 2:03-cr-00542-JCM-PAL     Document 1553     Filed 03/06/2007     Page 5 of 6

AO 245B     (Rev. 06/05) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page ___5___ of _6_

DEFENDANT:        JAMES HANNIGAN
CASE NUMBER:      2:03-CR-0542-JCM-PAL

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|        | **Assessment** | **Fine** | **Restitution** |
|--------|----------------|----------|-----------------|
| **TOTALS** | $ 100.00 | $ waived | $ n/a |

☐  The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|-------------------|-----------------|-------------------------|----------------------------|
| **TOTALS** | $              0 | $              0 |  |

☐  Restitution amount ordered pursuant to plea agreement $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐  the interest requirement is waived for the   ☐  fine   ☐  restitution.

    ☐  the interest requirement for the   ☐  fine   ☐  restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Case 5:08-xr-90442-RMW     Document 1     Filed 09/02/2008     Page 14 of 43
Case 2:03-cr-00542-JCM-PAL     Document 1591     Filed 06/06/2008     Page 22 of 26
Case 2:03-cr-00542-JCM-PAL     Document 1553     Filed 03/06/2007     Page 6 of 6

AO 245B     (Rev. 06/05) Judgment in a Criminal Case
            Sheet 6 — Schedule of Payments

Judgment — Page __6__ of __6__

DEFENDANT:        JAMES HANNIGAN
CASE NUMBER:      2:03-CR-0542-JCM-PAL

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A     X     Lump sum payment of $ __100.00__          due immediately, balance due

    ☐     not later than _____ , or
    ☐     in accordance       ☐ C,   ☐ D,   ☐   E, or   ☐ F below; or

B     ☐     Payment to begin immediately (may be combined with       ☐ C,       ☐ D, or       ☐ F below); or

C     ☐     Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
_____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D     ☐     Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
_____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
term of supervision; or

E     ☐     Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F     ☐     Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐     Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐     The defendant shall pay the cost of prosecution.

☐     The defendant shall pay the following court cost(s):

☐     The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

FEDERAL BUREAU OF PRISONS

F.C.I. - TERMINAL ISLAND

CALIFORNIA

# JAMES HANNIGAN

## 10026-111

SUCCESSFULLY COMPLETED THE NINE MONTH

# RESIDENTIAL DRUG ABUSE PROGRAM

on MAY 16, 2008

DR. L. McGEE, CHIEF, PSYCH. SVCS.

DR. H. IHLE, COORDINATOR
DRUG ABUSE PROGRAMS

MR. L. HOWELL, DTS

EXHIBIT B

1  PETER S. CHRISTIANSEN, ESQ.
   Nevada Bar No. 005254
2  CHRISTIANSEN LAW OFFICES
   9910 West Cheyenne Ave., Suite 110
3  Las Vegas, Nevada 89129
   (702) 240-7979
4  Attorney for Defendant
   JAMES HANNIGAN
5
   THOMAS F. PITARO, ESQ.
6  Nevada Bar No. 001332
   330 S. Third Street, Suite 860
7  Las Vegas, Nevada 89101
   (702) 382-9221
8  Attorney for Defendant
   MAURICE PETER EUNICE
9
                    **UNITED STATES DISTRICT COURT**
10
                       **DISTRICT OF NEVADA**
11

12

13  UNITED STATES OF AMERICA,          CR-S-03-542-JCM(PAL)

14                  Plaintiff,

15  v.                                **EMERGENCY MOTION TO ENFORCE
                                       CONDITIONS OF SUPERVISED
16  JAMES HANNIGAN and                 RELEASE**
    MAURICE PETER EUNICE
17
                  Defendants.
18

19      CERTIFICATION:    *This Motion is timely filed.*

20      COMES NOW, Defendant, JAMES HANNIGAN, by and through his attorney, Peter S.

21  Christiansen, Esq., and MAURICE PETER EUNICE, by and through his attorney, Thomas F.

22  Pitaro, Esq., respectfully requests this court Enforce The Terms And Conditions Of The

23  Supervised Release.

24  . . .

25  . . .

26  . . .

27  . . .

28  . . .

EXHIBIT C

1    This request is made pursuant to 18 U.S.C.A. §3601 and 18 U.S.C.A. §3583, and the

2    attached points and authorities.

3    DATED this 5th of June, 2008.

4

5    CHRISTIANSEN LAW OFFICES                    PITARO LAW OFFICES

6

7    By___/s/_____               By___/s/_____
     Peter S. Christiansen, Esq.                 Thomas F. Pitaro, Esq.
8    Nevada Bar No. 005254                       Nevada Bar No. 001332
     9910 W. Cheyenne Avenue, Suite 110          330 S. Third Street, Suite 860
9    Las Vegas, Nevada 89101                     Las Vegas, Nevada 89101
     Attorney for Defendant                      Attorney for Defendant
10   JAMES HANNIGAN                              MAURICE PETER EUNICE

11                         **POINTS AND AUTHORITIES**

12                                      **I.**

13                         **STATEMENT OF THE FACTS**

14        This case arose after allegations of a riot occurred on April 27, 2002 at Harrah's

15   Laughlin (the "Incident") between members of the Hells Angels Motorcycle Club and the

16   Mongols Motorcycle Club.  Prior to trial, the Government and the individual members of the

17   two groups, agreed to individual plea agreements.

18        This Motion requests this Honorable Court enforce the terms and conditions as ordered

19   in the Supervised Release and Special Conditions of Supervision, dated February 28, 2007 and

20   filed on March 06, 2007.

21   . . .

22   . . .

23   . . .

24   . . .

25   . . .

26   . . .

27   . . .

28

## II.

## LEGAL STANDARD

Pursuant to 18 U.S.C.A. §3601, which states in pertinent part:

§ 3601. Supervision of probation

A person who has been sentenced to probation pursuant to the provisions of subchapter B of chapter 227, or placed on probation pursuant to the provisions of chapter 403, or placed on supervised release pursuant to the provisions of section 3583, shall, during the term imposed, be supervised by a probation officer to the degree warranted by the conditions specified by the sentencing court.

Pursuant to 18 U.S.C.A. § 3583 (d), Supervised Release, states in pertinent part:

(d) *Conditions of supervised release.--The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance.* The court shall order as an explicit condition of supervised release for a defendant convicted for the first time of a domestic violence crime as defined in section 3561(b) that the defendant attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is readily available within a 50-mile radius of the legal residence of the defendant. The court shall order, as an explicit condition of supervised release for a person required to register under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act. The court shall order, as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000. *The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance. The condition stated in the preceding sentence may be ameliorated or suspended by the court as provided in section 3563(a)(4). The results of a drug test administered in accordance with the preceding subsection shall be subject to confirmation only if the results are positive, the defendant is subject to possible imprisonment for such failure, and either the defendant denies the accuracy of such test or there is some other reason to question the results of the test. A drug test confirmation shall be a urine drug test confirmed using gas chromatography/mass spectrometry techniques or such test as the Director of the Administrative Office of the United States Courts after consultation with the Secretary of Health and Human Services may determine to be of equivalent accuracy. The court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action*

3

1  *against a defendant who fails a drug test. The court may order, as a further condition*
2  *of supervised release, to the extent that such condition--*

3  *(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B),*
   *(a)(2)(C), and (a)(2)(D);*
4  *(2) involves no greater deprivation of liberty than is reasonably necessary for*
   *the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and*
5  *(3) is consistent with any pertinent policy statements issued by the Sentencing*
   *Commission pursuant to 28 U.S.C. 994(a);*
6  *any condition set forth as a discretionary condition of probation in section*
   *3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other*
7  *condition it considers to be appropriate.* If an alien defendant is subject to
   deportation, the court may provide, as a condition of supervised release, that he
8  be deported and remain outside the United States, and may order that he be
   delivered to a duly authorized immigration official for such deportation. The
9  court may order, as an explicit condition of supervised release for a person who
   is a felon and required to register under the Sex Offender Registration and
10 Notification Act, that the person submit his person, and any property, house,
   residence, vehicle, papers, computer, other electronic communications or data
11 storage devices or media, and effects to search at any time, with or without a
   warrant, by any law enforcement or probation officer with reasonable suspicion
12 concerning a violation of a condition of supervised release or unlawful conduct
   by the person, and by any probation officer in the lawful discharge of the
13 officer's supervision functions.
14
15      This Motion requests this Honorable Court enforce the terms and conditions as ordered
16 in the Supervised Release and Special Conditions of Supervision, dated February 28, 2007 and
17 filed on March 06, 2007.

18                                          **III.**

19                                     **ARGUMENT**

20      On February 13, 2007, Mr. Eunice was sentenced to thirty (30) months incarceration in

21 the United States Bureau of Prisons for violating for his guilty plea to one count of 18 U.S.C.

22 §1959 and NRS 200.481, Violent Crime In Aid of Racketeering (Battery/Assault Causing

23 Substantial Bodily Harm) Class "C".[1] On February 23, 2007, Mr. Hannigan was sentenced to

24 twenty-four (24) months incarceration in the United States Bureau of Prisons for violating for

25 his guilty plea to one count of 18 U.S.C. §1959 and NRS 200.481, Violent Crime In Aid of

26 Racketeering.  Additionally, Mr. Eunice and Mr. Hannigan (the "Defendants") were sentenced

27
   _____
28   [1]  See, Exhibit A, United States District Court Judgment in a Criminal Case, United States of America v.
   Maurice Eunice, Case Number 2:03 - CR 0542-JCM-PAL.

                                            4

1   to thirty six (36) months supervised release in a residential placement program, to be approved

2   by the Department of Parole and Probations. [2]

3          While incarcerated at Terminal Island, California, Mr. Hannigan attended 500 hours of

4   the Federal Bureau of Prison's Residential Drug Abuse Program.  Mr. Hannigan received his

5   certification for the same on May 16, 2008. [3]

6          Currently, Mr. Hannigan completed the first phase of his sentence and is awaiting

7   relocation approval to enter a half-way house in San Jose, California.  The residential placement

8   program was approved by United States Department of Parole and Probations Officer, Sonia

9   Lapizco, U.S.P.O. [4] However, Ms. Lapizco determined an additional condition should be added

10  to the Court's Order of Special Conditions of Supervision.  Ms. Lapizco informed Mr.

11  Hannigan by way of letter to his Case Manager, Ms. Bagareen, that a non-association condition

12  shall be added to the Supervised Release Special Conditions of Supervision prior to the

13  approval of the  residential placement.

14         Similarly, Mr. Eunice was informed by letter of May 12, 2008, that he will not be able to

15  be released to the Southern District of California (the location of his permanent residence),

16  unless he also agrees to a non-association provision being added to the terms and conditions of

17  his supervised release.[5]

18         Defendants request this Honorable Court enforce the original terms and conditions of

19  the Supervised Release and Special Conditions of Supervision.

20         Pursuant to this Honorable Court's Order, the following conditions applied to

21  Defendants' supervised release:

22

23         [2]  See, Exhibit B, United States District Court Judgment in a Criminal Case, United States of America v.

24  James Hannigan, Case Number 2:03 - CR 0542-JCM-PAL

25         [3]  See, Exhibit C, Federal Bureau of Prisons Residential Drug Abuse Program Certificate, dated May 16,

26  2008.

27         [4]  Sonia Lapizco, U.S.P.O., 28 South First Street, Ste. 106, San Jose, CA 95113

28         [5]  See, Exhibit D, Letter dated May 12, 2008 from Lisa Coen, Senior U.S. Probation Officer for the Sothern
    District of California addressed to Maurice Peter Eunice.

✓  The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon .

✓  The defendant shall cooperate in the collection of DNA as directed by the probation officer.

Additionally, the special conditions of supervision were as follows:

1.  **Possession of Weapons** - You shall not possess, have under your control, or have access to any firearm, explosive device, or other dangerous weapons, as defined by federal, state or local law.

2.  **Warrant less Search** - you shall submit to the search of you person, property, or automobile under your control by the Probation Officer, or any other authorized person under the immediate and personal supervision of the probation officer without a search warrant to ensure compliance with all conditions of release.

3.  **Substance Abuse Treatment** - You shall participate in and successfully complete a substance abuse treatment program, which will include drug testing, outpatient counseling, or residential placement, as approved and directed by the probation officer.  Further, you shall be required to contribute to the costs of services for such treatment, as approved and directed by the probation officer based on you ability to pay.

4.  **Alcohol Abstinence** - You shall refrain from the use and possession of beer, wine, liquor, and other forms of intoxicants.

5.  **Report to Probation Officer After Release From Custody** - You shall report in person, to the probation office in the district in which you are released within 72 hours of discharge from custody.

During his incarceration, Mr. Hannigan benefitted from his removal from society.  He utilized the opportunity to affirm responsibility for his poor choices and attend treatment abuse counseling.  Mr. Hannigan applied the teachings of the Residential Drug Abuse Program, and has been clean and sober for the past 15 months.  Mr. Hannigan intends to remain clean and sober and move forward with his life.

Mr. Hannigan now seeks to reside in the half-way house and fulfil the remaining portion of his sentence. There is no reason or indication for the Ms. Lapizco to arbitrarily decided to amend this Court's Order and impose a new condition to the supervised release. The Court's Order does not grant the Parole and Probation Officer the indiscriminate right to impose

1    additional terms to the Court's Order.  No reason, implication, just cause, notice or the

2    opportunity to be heard was afforded Mr. Hannigan on Ms. Lapizco's new requirement.

3    Moreover, this specific condition was argued before this Honorable Court during sentencing,

4    and this Court refused to impose such a restriction.

5         Mr. Eunice wants nothing more than to be able to return to his home in San Diego where

6    he has resided for decades, after he has completed his period of incarceration.  He is now being

7    forced, as a condition of being released to his home, to agree to a condition (non association)

8    that was not imposed by this court.  If he does not so agree then Parole and Probation says he

9    must move to Las Vegas, where he has never lived, to complete his supervised release.  Mr.

10    Eunice should not be forced to make that choice.

11                          **IV.**

12                  **CONCLUSION**

13         As such, Defendants request this Honorable Court enforce the terms and conditions as

14    ordered in the Supervised Release and Special Conditions of Supervision and direct the United

15    States Probation Office to refrain from attempting to add additional conditions of non-

16    association.

17         DATED this 5th of June, 2008.

18

19    CHRISTIANSEN LAW OFFICES          PITARO LAW OFFICES

20

21    By____/s/_____     By____/s/_____
        Peter S. Christiansen, Esq.          Thomas F. Pitaro, Esq.

22        Nevada Bar No.  005254           Nevada Bar No. 001332
        9910 W. Cheyenne Avenue, Suite 110    330 S. Third Street, Suite 860

23        Las Vegas, Nevada 89101          Las Vegas, Nevada 89101
        Attorney for Defendant            Attorney for Defendant

24        JAMES HANNIGAN             MAURICE PETER EUNICE

25

26

27

28

                              7

1  PETER S. CHRISTIANSEN, ESQ.
   Nevada Bar No. 005254
2  CHRISTIANSEN LAW OFFICES
   9910 West Cheyenne Ave., Suite 110
3  Las Vegas, Nevada 89129
   (702) 240-7979
4  Attorney for Defendant
   JAMES HANNIGAN
5

6                    UNITED STATES DISTRICT COURT

7                        DISTRICT OF NEVADA

8

9  UNITED STATES OF AMERICA,          CR-S-03-542-JCM(PAL)

10              Plaintiff,
                                       **SUPPLEMENT TO EMERGENCY**
11 v.                                  **MOTION TO ENFORCE CONDITIONS**
                                       **OF SUPERVISED RELEASE**
12 JAMES HANNIGAN and
   MAURICE PETER EUNICE
13
              Defendants.
14

15      COMES NOW, Defendant, JAMES HANNIGAN, by and through his attorney, Peter S.

16 Christiansen, Esq., and supplements his Emergency Motion to Enforce Conditions of

17 Supervised Release [#1591] as follows.

18                             **ARGUMENT**

19

20      Currently, Mr. Hannigan completed the first phase of his sentence and has been

21 conditionally approved to enter a half-way house in San Jose, California.  As explained in the

22 underlying Emergency Motion, the residential placement program was approved by United

23 States Department of Parole and Probations Officer, Sonia Lapizco, U.S.P.O.

24      However, Ms. Lapizco determined an additional condition should be added to the

25 Court's Order of Special Conditions of Supervision. Ms. Lapizco informed Mr. Hannigan by

26 way of letter to his Case Manager, Ms. Bagareen, that a non-association condition shall be

27 added to the Supervised Release Special Conditions of Supervision prior to the approval of the

28 residential placement.

EXHIBIT D

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The undersigned attempted to contact Assistant United States Attorney, Andrew Duncan, to resolve this issue, but his call was never returned. See, Affidavit of Peter S. Christiansen, Esq. attached hereto as Exhibit "A."

As a result, Mr. Hannigan was compelled to file the underlying Emergency Motion, which prompted him to be transported to North Las Vegas Detention Center to be held prior to his hearing.

This Supplement clarifies the relief sought of this Honorable Court in Defendant Hannigan's Emergency Motion to Enforce Conditions of Supervised Release

## RELIEF SOUGHT

The relief sought by Mr. Hannigan is as follows.

First, Mr. Hannigan requests this Honorable Court enforce the original terms and conditions of the Supervised Release and Special Conditions of Supervision (and not impose the non-association condition recommended by P&P).

Second, Mr. Hannigan requests this Honorable Court release him on July 9, 2008 with order that he travel by airplane with his wife to the halfway house waiting for him in San Francisco. Release is warranted because he has been forced to endure close to thirty days in North Las Vegas Detention Center, which as this Honorable Court is aware, is of the worst detention conditions in the country. The only reason he is in North Las Vegas is because P&P recommended the additional non-association condition.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

2

1

2   Further, this request is cost efficient to the government. If Mr. Hannigan is not released

3   on July 9, 2008, he will be transported at government expense from North Las Vegas Detention

4   Center and likely to another facility until he is finally released to find his own way to the

5   halfway house in San Francisco on July 19, 2008.  Release on July 9, 2008 will save the

6   government money and ensure Mr. Hannigan makes it to the Half Way House with his wife.

    DATED this _7_ day of July, 2008.

7

8                               CHRISTIANSEN LAW OFFICES

9                                                        *ILLEGAL FOR:

10                              By_____

11                                   Peter S. Christiansen, Esq.
                                     Nevada Bar No.  005254
12                                   9910 W. Cheyenne Avenue, Suite 110
                                     Las Vegas, Nevada 89129
13                                   Attorney for Defendant
                                     JAMES HANNIGAN
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         3

Wednesday, July 9, 2008 - 2:03-cr-542-JCM-PAL

1

1    UNITED STATES DISTRICT COURT

2    DISTRICT OF NEVADA

3    THE HONORABLE JAMES C. MAHAN, JUDGE PRESIDING

4

5    UNITED STATES OF AMERICA,         )
                                       )
6              Plaintiff,              )
                                       )   CASE NO.:
7         vs.                          )   2:03-cr-542-JCM-PAL
                                       )
8    JAMES HANNIGAN,                   )
                                       )
9              Defendant,              )   C E R T I F I E D   C O P Y
                                       )
10   _____)

11

12   REPORTER'S TRANSCRIPT OF DEFENDANTS' REQUEST TO MODIFY
                 CONDITIONS OF SUPERVISION

13

14             Wednesday, July 9, 2008

15

16

17   APPEARANCES:

18   See Page 2

19

20

21

22

23

24                     HEATHER K. NEWMAN, CCR 774
                       Official Federal Reporter

25
                    EXHIBIT E

Wednesday, July 9, 2008 - 2:03-cr-542-JCM-PAL

2

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF:          UNITED STATES ATTORNEY
                                 BY:  ERIC JOHNSON
 3                               333 South Las Vegas Boulevard
                                 Suite 5000
 4                               Las Vegas, NV  89101
                                 (702) 388-6336
 5
     FOR DEFENDANT               CHRISTIANSEN LAW OFFICE
 6   JAMES HANNIGAN:             BY:  PETER S. CHRISTIANSEN
                                 9910 W. Cheyenne Avenue, Suite 110
 7                               Las Vegas, NV  89129
                                 (702) 240-7979
 8
     FOR DEFENDANT               PITARO LAW OFFICE
 9   MAURICE EUNICE:        BY:  THOMAS F. PITARO
                                     MICHAEL MICELI
10                               330 South Third Street, Suite 860
                                 Las Vegas, NV  89101
11                               (702) 382-9221

12   ALSO PRESENT:              MICHAEL MASTRANGIOLI
                                AMBERLEIGH VALDEZ
13                              Probation Department

14

15

16

17

18

19

20

21

22

23

24

25
```

Wednesday, July 9, 2008 - 2:03-cr-542-JCM-PAL

3

1          LAS VEGAS, NEVADA; WEDNESDAY, JULY 9, 2008; 10:00 A.M.

2                              -oOo-

3                      P R O C E E D I N G S

4

5          THE CLERK:  All rise.

6          THE COURT:  Thank you.  You may be seated.

7          THE CLERK:  Court is now in session.

8          This is the time set for the hearing of defendant

9   James Hannigan's Request to Modify Conditions of Supervision,

10  criminal case number 2:03-cr-542-JCM-PAL, United States of

11  America vs. James Hannigan.

12          Counsel, please note your appearances for the record.

13          THE COURT:  Mr. Johnson.

14          MR. JOHNSON:  Eric Johnson.

15          THE COURT:  Thank you.

16          Mr. Christiansen.

17          MR. CHRISTIANSEN:  Good morning, Your Honor.

18          MR. PITARO:  Your Honor, this is also on for

19  Mr. Eunice who joined in the motion as well.

20          THE COURT:  That's correct.

21          MR. PITARO:  Tom Pitaro with Mike Miceli appearing

22  for Maurice Eunice.

23          THE COURT:  That's fine.

24          THE DEFENDANT:  Good morning, Your Honor.

25          THE COURT:  Good morning.  How are you?

HEATHER K. NEWMAN, FOCR, RPR, CCR 774     (702)464-5828

Wednesday, July 9, 2008 - 2:03-cr-542-JCM-PAL

4

1    MR. CHRISTIANSEN:  Mr. Hannigan is present in

2  custody.

3    THE COURT:  Yeah, Mr. Hannigan is present and

4  Mr. Eunice is not.

5    MR. PITARO:  No, he's still in California.

6    THE COURT:  All right.

7    I wanted to have a hearing on this so I could explain

8  the way the procedure works because I think you're in the wrong

9  court, to try to cut to the chase.  This happens all the time

10  when somebody gets released to, and let's not say from

11  California to Nevada, they get released to Minnesota, let's

12  say, and so I will get some paperwork from the probation

13  officer in Minnesota saying transfer jurisdiction to us and so

14  I sign off on it and it gets transferred then to Minnesota and

15  then the Minnesota judge decides what the conditions are.

16    So, I mean, I've set the conditions for Mr. Hannigan

17  that I -- that I feel are appropriate but, he's being released

18  to California and the California probation officer can set

19  conditions subject to a judge's approval.  So, it's almost like

20  he's got to be released to California and then the jurisdiction

21  over the supervised release will get transferred to California,

22  which is where he will be, and then they'll be a judge there

23  and he can apply there to have the condition lifted or changed

24  or modified.

25    I mean, let's say that we -- that -- and it happens

HEATHER K. NEWMAN, FOCR, RPR, CCR 774    (702)464-5828

Wednesday, July 9, 2008 - 2:03-cr-542-JCM-PAL

5

1    that somebody comes here and they say, oh, you know what, we

2    see he's now got a problem with -- a drinking problem, for

3    example, so we need a new condition that -- this fellow gets

4    transferred, again, from Minnesota here, let's say, and he's --

5    we need a new condition because he's got a drinking problem so

6    I want him to get treatment for that.  So then I will impose a

7    new condition saying okay, you know, you've got to refrain from

8    alcohol use or whatever or get treatment and counseling,

9    whatever it may be, but it's really wherever Mr. Hannigan's

10   going to be released who decides what they're going to do.

11           I mean, I've set the conditions and those are my

12   conditions, but now -- and again, take a minute, you know,

13   because I know this is different, but I can't say, okay,

14   California, you have to accept him.  I mean, it seems kind of

15   silly to me.  I looked in my dictionary and I -- outlaw

16   motorcycle gang, I didn't see any definition so, I don't know

17   what an outlaw motorcycle gang is and that's the condition that

18   it seemed Mr. Hannigan's complaining about and, I mean, I don't

19   know what -- what an outlaw motorcycle gang, it seems silly to

20   me but, they're going to be doing the supervising, they set the

21   conditions.

22           Mr. Christiansen.

23           MR. CHRISTIANSEN:  Judge, here's part of the quandary

24   that Mr. Hannigan is faced with.  In order to even be eligible

25   to get released --

Wednesday, July 9, 2008 - 2:03-cr-542-JCM-PAL

6

1        THE COURT:  Come up here if you would.  I want to be
2    sure we've got you on all of the systems.
3        MR. CHRISTIANSEN:  I apologize.
4        THE COURT:  That's all right.
5        MR. CHRISTIANSEN:  The quandary Mr. Hannigan faces is
6    Your Honor set conditions that did not include a
7    non-association condition and that was something that was very
8    specifically litigated by the parties at the sentencing.  In
9    order for -- his house has been inspected, his wife's present
10   here in court, he's been declared eligible for everything,
11   successfully completed the RDAP program plus programs as well
12   as any person could do within Terminal Island where he's
13   currently at.  In order for him to go or be eligible for the
14   San Francisco house, which is where he was set to be released,
15   Parole and Probation requires of him to sign a waiver wherein
16   he recognizes the club to be a criminal enterprise.
17       THE COURT:  I know.
18       MR. CHRISTIANSEN:  And if he won't do that, they
19   simply won't send him --
20       THE COURT:  And that's it.
21       MR. CHRISTIANSEN:  -- send him there.
22       As I take Your Honor's explanation, Your Honor would,
23   if he came here, not -- you know, you'd enforce and ask Parole
24   and Probation to enforce those conditions which you set at the
25   time of the sentencing that did not include a non-association

HEATHER K. NEWMAN, FOCR, RPR, CCR 774     (702)464-5828

7

1    clause.  Is that accurate?

2            THE COURT:  That's accurate.

3            MR. CHRISTIANSEN:  And so I take it that for

4    Mr. Hannigan's sake, it may be best for him to be -- to come to

5    Las Vegas than to have somebody in Northern California litigate

6    that issue for him.

7            THE COURT:  I mean, that's going to be some -- a

8    decision he's going to have to make but, let me give you

9    another example.

10           MR. CHRISTIANSEN:  Yes, sir.

11           THE COURT:  Let's say he said, well, I'll go to

12   Arizona then.  So, he goes to Phoenix and they say, oh, we

13   don't have any such condition, I mean, or they don't impose

14   that condition, maybe, I don't know, but you see, wherever

15   Mr. Hannigan gets released, whatever district he gets released

16   to, has the right to set the conditions.  In other words, the

17   probation officer there can say -- and I used the example

18   before -- well, let's say, oh, we didn't realize this before

19   but, he has a drinking problem, he needs counseling and to

20   attend rehab.  Okay.  So we impose a new condition.  But

21   it's -- it's whoever is supervising him, what district is

22   supervising Mr. Hannigan.

23           Now, if he came here, I think you know what my

24   position would be on these conditions.  They would be the same

25   condition.  And, again, I'm -- well, I won't say anything about

Wednesday, July 9, 2008 - 2:03-cr-542-JCM-PAL

8

1   what California does, about this condition, but I don't think

2   much of this condition.  To me, it's almost unenforceable.

3            MR. CHRISTIANSEN:  Understood, Judge.

4            May I have a moment to talk to Mr. Hannigan?

5            THE COURT:  Absolutely.  Take your time.

6            MR. CHRISTIANSEN:  So the Court understands, his date

7   to be released --

8            THE COURT:  I understand Mr. Hannigan is on the horns

9   of a dilemma because if you go to California, then this is the

10  way it's going to be, Mr. Hannigan.  You have to agree to this

11  condition.

12           MR. CHRISTIANSEN:  And he's set to be released to the

13  halfway house on the 17th, we all confirmed that this morning.

14  P&P --

15           THE COURT:  I know.  It's coming up.  I know.  I

16  understand that.

17           MR. CHRISTIANSEN:  Six days away.

18           THE COURT:  Mr. Johnson, do you have anything to add?

19  I'll be happy to hear anything you've got to say.

20           MR. JOHNSON:  No, Your Honor.

21           THE COURT:  But it's just the way we -- the way

22  things are.

23           Take a moment -- take a moment, Mr. Pitaro, if you

24  want to.

25           MR. PITARO:  No, I -- here is -- here is what appears

Wednesday, July 9, 2008 - 2:03-cr-542-JCM-PAL

9

1   to be the quandary that Mr. Eunice is the same issue.

2              THE COURT:  Yeah.

3              MR. PITARO:  Save and except, I don't know if we

4   provided it but, on May 12th he got a letter from a Lisa Coen,

5   C-o-e-n, Senior U.S. Probation Officer, who said that even

6   though you have all your ties and you live in Southern

7   California, that unless you waive this condition, which the

8   Court didn't apply -- first, unless you waive that condition,

9   you're going to be released not to Southern California, you're

10  going to be released to Las Vegas.  So you're going to have to

11  come to Las Vegas, which, the politest word I can think of is

12  absurd for someone who lives there.  However, within the body

13  it says if the judge indicated the case should address and fall

14  with the sentencing transcript, they would take that into

15  account.  So, at least if --

16             THE COURT:  But again, there's going to be a judge

17  there, Mr. Pitaro.

18             MR. PITARO:  No, he's not going to get released

19  there, they're releasing him to Las Vegas.  I mean, they're --

20  that's what they're claiming is they won't take him in

21  Southern California and they bring him here.

22             THE COURT:  I understand but, and that's all I'm

23  saying, to get that condition released for Mr. Eunice so that

24  he can go to and be supervised in California, a California

25  judge -- and I forget, he's from San Diego, is he not?  That's

Wednesday, July 9, 2008 - 2:03-cr-542-JCM-PAL

10

1   my recollection.

2          MR. PITARO:  Yes.

3          THE COURT:  So somebody in the Southern District of

4   California, there will be a judge the case will be assigned to

5   and he would be the one to have to waive the condition.  I

6   don't have any jurisdiction over California.  I can't say, I'm

7   ordering you, California, not to impose this condition, that

8   we'll impose the conditions that we want to that we feel are

9   necessary.  I mean, that's -- that's the way -- what it comes

10   down to.

11         MR. PITARO:  But just because we're going to have to

12   order the transcript and we'll send it there but there is a --

13   the Court did not impose a non-association clause?

14         THE COURT:  No, absolutely not, and to me, it's a

15   silly condition but --

16         MR. PITARO:  I understand.

17         THE COURT:  -- he's not coming here.

18         MR. PITARO:  Well, we'll submit that, the hearing,

19   and we'll decide what to do.  But we'll also submit the

20   transcript that the Court's explicitly said there is no

21   non-association and now they can see it in black and white

22   because apparently they don't want to --

23         THE COURT:  But, again, they could impose a new

24   condition and say, okay, Mr. Hannigan, we want you to submit to

25   mental health counseling or something, you know, because we

Wednesday, July 9, 2008 - 2:03-cr-542-JCM-PAL

11

1   think that he's now a danger to other people or -- I mean, so

2   they can impose all sorts of new conditions that I never -- I

3   never thought to impose and never saw the need to, but again,

4   it's up to the supervising judge in that district to which he's

5   released to say, okay, I agree with Probation or I disagree

6   with Probation.

7          Mr. Mastrangioli, do you -- am I saying anything in

8   error?  Is there anything --

9          PROBATION OFFICER:  No, Your Honor.  You haven't said

10  anything in error.

11         THE COURT:  That's just the way it is.  And it's not

12  the --

13         MR. PITARO:  Okay.

14         THE COURT:  I'm sympathetic, and you know the way I

15  feel about the First Amendment, you know, and the right of free

16  association.  If he wants to -- Mr. Hannigan wants to associate

17  with the Cub Scouts, then he can do that, or the Nuns of Saint

18  Mary or the Hells Angels, whatever he wants to do.  It's a free

19  country, but --

20         MR. PITARO:  I understand.

21         THE COURT:  -- that's neither here nor there.

22         MR. PITARO:  And let me just, once again, so I'm --

23  because I am making a record to go with the transcript because

24  the letter says absent this information, until the matter has

25  been addressed by the district court -- which is you --

HEATHER K. NEWMAN, FOCR, RPR, CCR 774    (702)464-5828

Wednesday, July 9, 2008 - 2:03-cr-542-JCM-PAL

12

1  according to this letter, we will not agree to accept your case

2  for transfer.  So what we will do is given the explicit finding

3  or reiteration today that you did not impose it, we'll submit

4  the transcript --

5        THE COURT:  Yeah.

6        MR. PITARO:  -- and hopefully that will resolve it,

7  if possible.

8        THE COURT:  And see, but I don't -- and here's the

9  other problem, Mr. Pitaro, that I can see and that is, if I can

10  analogize, let's say that I asked a police officer, will you

11  stop me if I was going five miles an hour over the speed limit

12  and he said no, no, that's all right.  So I go out and I go

13  five miles over the speed limit and I get pulled over by

14  another officer.  No, no, I always enforce it.  I mean, you see

15  what I'm saying?  It's up to each -- each district, the parole

16  officers in that -- you know, because again, the officers can

17  differ.  One can say, oh, yeah, I don't think that's a

18  necessary condition, the other one can say, absolutely -- and

19  I'm slamming my hand figuratively on the desk here --

20  absolutely, by golly, we're going to have that condition, you

21  know, and so it just depends.  So, I mean, one officer can tell

22  you, oh, yeah, listen, bring a note from your mom and then it's

23  okay and the next one says, I'm not going to accept that, so,

24  it's -- that's the system.

25        MR. PITARO:  In light of that, I have your

HEATHER K. NEWMAN, FOCR, RPR, CCR 774     (702)464-5828

Wednesday, July 9, 2008 - 2:03-cr-542-JCM-PAL

13

1   representation -- I have your reiteration you didn't impose the

2   non-association clause and I'll submit that.

3          THE COURT:  Yeah.  I mean, if you want to prepare an

4   order then . . .

5          MR. PITARO:  If I could.

6          THE COURT:  Yeah.  Take a moment to confer with

7   Mr. Chesnoff, too.

8          (Brief pause in proceedings.)

9          MR. PITARO:  Judge, if -- if -- I talked before I got

10  to the mic -- if we may then, if we could submit, if it would,

11  an order to the Court reiterating that you did not impose that

12  condition, if we could do that, that may resolve the problem.

13  We don't know.  If it doesn't, at least we've got this half of

14  it done.

15         THE COURT:  Okay.

16         MR. PITARO:  Would that be fair, Judge?

17         THE COURT:  That's fine.

18         And understand, my hands are tied.

19         MR. PITARO:  Understand.

20         THE COURT:  And simply if Mr. Hannigan comes here, I

21  will be supervising.  I'll be the judge --

22         MR. PITARO:  Right.

23         THE COURT:  -- to be overseeing the supervision of

24  him.

25         MR. PITARO:  Right.

HEATHER K. NEWMAN, FOCR, RPR, CCR 774    (702)464-5828

14

1          THE COURT:  And so the conditions I set are the

2    conditions I set.  I saw no need to impose a condition dealing

3    about -- dealing with his association with people and I still

4    don't today so . . .

5          MR. PITARO:  Thank you.

6          MR. CHRISTIANSEN:  One final thing, Judge.

7          I know you don't control the Bureau of Prisons, but

8    Mr. Hannigan is here in Northtown.  He would prefer to remain

9    here until his out date, which is six days from now, as opposed

10   to going back to Terminal Island via Oklahoma City so, maybe if

11   the Court would suggest that they try to at least accommodate

12   that.  I know you can't control it.

13         THE COURT:  I'll recommend that they try to keep

14   him --

15         MR. CHRISTIANSEN:  Thank you, Your Honor.

16         THE COURT:  This is the first time -- I'm going to

17   alert the media, I'd like to have the media aware, this is the

18   first time -- Mr. Johnson, make a note -- we've actually had

19   somebody request to spend time in North Las Vegas jail so,

20   that's a first.

21         MR. JOHNSON:  I'll have a press officer contact your

22   staff.

23         MR. PITARO:  Judge, let me -- maybe this -- only for

24   Mr. Hannigan, maybe if you could just have Mr. Hannigan held

25   here until the order is signed and then we will submit the

Wednesday, July 9, 2008 - 2:03-cr-542-JCM-PAL

15

1   order and --

2            THE COURT:  And again, it's up to them.

3            MR. PITARO:  I was just trying to find a way to --

4            THE COURT:  I know.

5            MR. PITARO:  -- keep it.  If we -- if you just

6   ordered him kept here until the final disposition by written

7   order, then we'll submit it in six days.

8            THE COURT:  No, I understand and, but it's up to them

9   to do what they want to do.

10           Yes, sir, Mr. Mastrangioli.

11           PROBATION OFFICER:  Yes, Your Honor.

12           Would the Court want us to advise the Northern

13  District of California?

14           THE COURT:  Do I want you to advise them of anything?

15           PROBATION OFFICER:  What -- because they -- they know

16  this hearing is taking place.  We're kind of still in the same

17  situation.  They still haven't -- they still denied

18  Mr. Hannigan.

19           THE COURT:  Yeah, and they have the right to do that,

20  Mr. Mastrangioli.  I mean, it's -- they're going to set the

21  conditions so, they set the conditions.  I don't control them

22  and so, I mean, I would say don't advise them of anything, I

23  mean, you know, the judge said he doesn't have jurisdiction to

24  do anything here if Mr. Hannigan goes to a different district.

25  I mean, just -- like I said, I'm going up to Utah.  Then there

HEATHER K. NEWMAN, FOCR, RPR, CCR 774     (702)464-5828

Wednesday, July 9, 2008 - 2:03-cr-542-JCM-PAL

16

1    would be a Utah judge, Utah probation officer overseeing it

2    and --

3                PROBATION OFFICER:  So that Mr. Hannigan, once he

4    starts supervision, would be releasing to Las Vegas?

5                THE COURT:  I don't know where he is.  I mean, that's

6    a decision he's going to make.

7                MR. CHRISTIANSEN:  That application's been filed

8    already, Your Honor.

9                THE COURT:  All right.

10               It's a decision he's going to have to make.

11               MR. CHRISTIANSEN:  Yes, sir.

12               THE COURT:  And, I mean, I'm sorry, but that's --

13   that's the way it is.

14               All right?

15               Just a second.  Hold on just a second and let me make

16   sure there's nothing more.

17               (Brief pause in proceedings.)

18               MR. CHRISTIANSEN:  Thank you, Your Honor.

19               MR. PITARO:  Judge, we'll prepare an order.

20               THE COURT:  Yeah, prepare an order then.  Thank you.

21               MR. PITARO:  Thank you.

22               MR. JOHNSON:  Thank you, Judge.

23               THE CLERK:  All rise.

24

25               (Proceedings adjourned at 10:18 a.m.)

HEATHER K. NEWMAN, FOCR, RPR, CCR 774    (702)464-5828

Wednesday, July 9, 2008 - 2:03-cr-542-JCM-PAL

17

1                                *   *   *

2   I hereby certify that pursuant to Section 753, Title 28,
    United States Code, the foregoing is a true and correct
3   transcript of the stenographically reported proceedings held in
    the above-entitled matter.

4

5   DATED:  8-15-2008              /s/ Heather K. Newman
                                   HEATHER K. NEWMAN
6                                  U.S. Court Reporter
                                   CCR 774

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF MAILING**

The undersigned hereby certifies that on this ____ of August, 2008, a true and correct copy of the foregoing NOTICE AND EMERGENCY MOTION TO TRANSFER "SUPERVISED RELEASE" AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF was either hand-delivered or mailed to the following:

United States Attorney's Office
150 Almaden Blvd., Suite 900
San Jose, CA 95113

United States Attorney's Office
Attn: Eric Johnson
333 South Las Vegas Blvd., Suite 5000
Las Vegas, NV 89101

United States Probation Office
Attn: Sonia Lapizco
280 S. First St., Suite 106
San Jose, CA 95113

United States Probation Office
Attn: Michael Mastrangioli & Amberleigh Valdez
300 South Las Vegas Blvd., Suite 1200
Las Vegas, NV 89101

United States District Court
Attn: Honorable James C. Mahan
333 South Las Vegas Blvd., Room 1334
Las Vegas, NV 89101

I declare the above to be true under penalty of perjury. Executed in San Jose, CA on September____, 2008.

_____